Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH GRAY, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MYOKARDIA, INC., SUNIL AGARWAL, MARY CRANSTON, TASSOS GIANAKAKOS, DAVID MEEKER, MARK PERRY, KIM POPOVITS, and WENDY YARNO, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Kenneth Gray ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against MyoKardia, Inc. ("MyoKardia" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R.

§ 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of MyoKardia by Gotham Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Bristol-Myers Squibb Company ("Bristol Myers" or "Parent").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of MyoKardia common stock.

---

[1] For example, the Company reportedly participated in a conference in New York City in 2019. *See, e.g.*, MyoKardia, *MyoKardia to Present at 2019 Cantor Global Healthcare Conference*, http://investors.myokardia.com/news-releases/news-release-details/myokardia-present-2019-cantor-global-healthcare-conference (last visited Oct. 27, 2020).

7.      Defendant MyoKardia is a clinical stage biopharmaceutical company that discovers, develops, and commercializes targeted therapies for the treatment of serious and neglected rare cardiovascular diseases. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "MYOK."

8.      Defendant Sunil Agarwal ("Agarwal") is a director of the Company.

9.      Defendant Mary Cranston ("Cranston") is a director of the Company.

10.     Defendant Tassos Gianakakos ("Gianakakos") is Chief Executive Officer ("CEO"), President, and a director of the Company. Defendant Gianakakos entered into a tender and support agreement with Parent and Merger Sub dated as of October 3, 2020 to tender all of his shares of Company common stock (representing approximately 1.2% of the total outstanding shares of the Company as of October 3, 2020) in connection with the Proposed Transaction (the "Tender and Support Agreement"). According to the Solicitation Statement, the aggregate cash consideration that would be payable for Defendant Gianakakos's shares in the Company based on Bristol Myers' offer price of $225.00 per share is $140.6 million.[2]

11.     Defendant David Meeker ("Meeker") is a director of the Company.

12.     Defendant Mark Perry ("Perry") is a director of the Company.

13.     Defendant Kim Popovits ("Popovits") is a director of the Company.

14.     Defendant Wendy Yarno ("Yarno") is a director of the Company.

15.     Defendants Agarwal, Cranston, Gianakakos, Meeker, Perry, Popovits, and Yarno are collectively referred to herein as the "Individual Defendants."

---

[2] According to the Solicitation Statement, this figure excludes "shares issuable upon the exercise of Company Stock Options and the settlement of Company RSU Awards and also excludes shares issuable under the Company ESPP." *See* Solicitation Statement at 6.

16.     Defendants MyoKardia and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

17.     On July 2, 2020, the Company and Bristol Myers entered into a confidentiality agreement to facilitate discussions regarding a potential strategic partnership between the parties. Subsequently, in July 2020, the parties gave presentations to one another in connection with a strategic partnership.

18.     On August 18, 2020, the Chairman and CEO of Bristol Myers (Giovanni Caforio), and Defendant CEO Gianakakos spoke telephonically regarding a potential strategic partnership between the parties in the cardiovascular space.

19.     On August 27, 2020, members of the senior leadership teams of the Company and Bristol Myers had a meeting to continue discussions regarding potential opportunities for a strategic partnership.

20.     On September 2, 2020, Bristol Myers' CEO sent a non-binding proposal to Defendant CEO Gianakakos for Bristol Myers to acquire all outstanding shares of the Company's common stock for $185.00 per share in cash (the "September 2nd Proposal").

21.     On September 3, 2020, the Board held a meeting and discussed, among other things, the September 2nd Proposal and whether any other pharmaceutical companies might have interest in a potential strategic transaction, including a global pharmaceutical company referred to in the Solicitation Statement as "Party A."

22.     On September 7, 2020, Defendant CEO Gianakakos informed Bristol Myers' CEO that the September 2nd Proposal was insufficient to proceed with further discussions regarding a

potential transaction.

23.    On September 13, 2020, Bristol Myers' CEO contacted Defendant CEO Gianakakos and made a verbal, non-binding proposal on behalf of Bristol Myers to acquire all outstanding shares of the Company's common stock for $210.00 per share in cash (the "September 13th Proposal").

24.    On September 13, 2020—(11) eleven days after the Company received the September 2nd Proposal and (10) ten days after the Board discussed reaching out to Party A—the Company directed its financial advisors, Centerview Partners LLC ("Centerview") and Guggenheim Securities, LLC ("Guggenheim"), to contact Party A to inquire whether Party A would be interested in a potential sale transaction involving the Company.

25.    On September 14, 2020, representatives of Guggenheim contacted Party A as directed by the Board. Representatives of Centerview made a follow-up call to Party A shortly thereafter. Party A indicated it would discuss internally and revert with a response.

26.    On September 14 and 15, 2020, the Board held meetings to discuss, among other things, the September 13th Proposal, the Company's response thereto, and whether the Company should contact other pharmaceutical companies, in addition to Party A, about a potential sale transaction involving the Company. The Board determined that the Company should require improved terms from Bristol Myers as a condition to allowing further merger discussions. The Board agreed to provide Bristol Myers with limited due diligence information as a basis to increase its offer. The Board "concluded not to contact any other parties" about a potential sale transaction involving the Company.

27.    On September 16, 2020, Defendant CEO Gianakakos advised Bristol Myers' CEO that the Board would not permit Bristol Myers to conduct full due diligence until it provided an

improved proposal acceptable to the Board; however, the Company's senior management would provide Bristol Myers with limited due diligence information to assist Bristol Myers in re-evaluating its position on value. Bristol Myers' CEO agreed to proceed in this manner.

28.     On September 18, 2020, Party A contacted Centerview and purportedly indicated they were not interested in engaging with the Company with respect to a potential sale transaction.

29.     On September 24, 2020, Bristol Myers' CEO contacted Defendant CEO Gianakakos and made a verbal, non-binding proposal for Bristol Myers to acquire all outstanding shares of the Company's common stock at a price of $220.00 per share in cash (the "September 24th Proposal").

30.     On September 25, 2020, the Board authorized Defendant CEO Gianakakos to continue to negotiate with Bristol Myers to determine whether Bristol Myers would be willing to pay more than $220.00 per share and to offer an exclusive period of negotiations in exchange for an increase in price.

31.     On September 25, 2020, Defendant CEO Gianakakos had a call with Bristol Myers' CEO to continue to negotiate on price. On the call, Bristol Myers' CEO made a verbal, non-binding proposal for Bristol Myers to acquire all outstanding shares of the Company's common stock for $225.00 per share subject to exclusive negotiations between the parties to facilitate a targeted announcement date of October 5, 2020 (the "September 25th Proposal").

32.     Later that day, the Company and Bristol Myers entered into a letter agreement providing for exclusive negotiations between the parties for a limited amount of time.

33.     On September 28, 2020, Bristol Myers provided to the Company a draft of a tender and support agreement to be executed by Defendant CEO Gianakakos, under which Defendant Gianakakos would agree to, among other things, tender his shares of Company common stock in

connection with the Proposed Transaction.

34.     The parties negotiated terms of a definitive merger agreement over the next several days.

35.     On October 2, 2020, the parties had several conference calls to discuss the treatment of the Company's employees in the Proposed Transaction, including the level of compensation and benefits to be provided generally to Company employees after closing, the treatment of annual bonuses for fiscal year 2020, the severance benefits payable to certain non-executive employees, and employee retention matters (the "October 2nd Employment Discussions").

36.     On October 3, 2020, counsel to the parties finalized the transaction documents, including the merger agreement and the tender and support agreement to be executed by Defendant Gianakakos.

37.     That same day, the parties to the Proposed Transaction executed the merger agreement, and Defendant Gianakakos executed the Tender and Support Agreement.

38.      On October 5, 2020, before market hours, MyoKardia and Bristol Myers announced that they had entered into a definitive merger agreement under which Bristol Myers will acquire MyoKardia for $225.00 per share in cash. The press release states, in pertinent part:

**Bristol Myers Squibb to Acquire MyoKardia for $13.1 Billion in Cash**

*Mavacamten Is a Potential First-in-Class Medicine with Compelling Data in the Treatment of Patients with Symptomatic Obstructive Hypertrophic Cardiomyopathy*

*Mavacamten Will Be a Medium- and Long-Term Growth Driver Presenting a Significant Commercial Opportunity upon Approval*

*Promising Portfolio of Pipeline Candidates Strengthens and Extends Bristol Myers Squibb's Leading Cardiovascular Franchise*

*Expected to be Accretive to Non-GAAP Earnings Starting in 2023*

October 05, 2020 06:30 AM Eastern Daylight Time

NEW YORK & BRISBANE, Calif.--(BUSINESS WIRE)--Bristol Myers Squibb (NYSE: BMY) and MyoKardia, Inc. (Nasdaq: MYOK) today announced a definitive merger agreement under which Bristol Myers Squibb will acquire MyoKardia for $13.1 billion, or $225.00 per share in cash. The transaction was unanimously approved by both the Bristol Myers Squibb and MyoKardia Boards of Directors and is anticipated to close during the fourth quarter of 2020.

MyoKardia is a clinical-stage biopharmaceutical company discovering and developing targeted therapies for the treatment of serious cardiovascular diseases. Through the transaction, Bristol Myers Squibb gains mavacamten, a potential first-in-class cardiovascular medicine for the treatment of obstructive hypertrophic cardiomyopathy ("HCM"), a chronic heart disease with high morbidity and patient impact. A New Drug Application ("NDA") for mavacamten for the treatment of symptomatic obstructive HCM – based on data from the EXPLORER-HCM study – is expected to be submitted to the U.S. Food and Drug Administration ("FDA") in the first quarter of 2021. Bristol Myers Squibb expects to explore the full potential of mavacamten in additional indications, including non-obstructive HCM, as well as develop MyoKardia's promising pipeline of novel compounds, including two clinical-stage therapeutics: danicamtiv (formerly MYK-491) and MYK-224.

"The acquisition of MyoKardia further strengthens our portfolio, pipeline and scientific capabilities, and is expected to add a meaningful medium- and long-term growth driver," said Giovanni Caforio, M.D., Board Chair and Chief Executive Officer of Bristol Myers Squibb. "We are further strengthening our outstanding cardiovascular franchise through the addition of mavacamten, a promising medicine with the potential to address a significant unmet medical need in patients with cardiovascular disease. Our companies share a commitment to innovation and bold science, and our respective strengths will help us realize the value inherent in this portfolio. We have long admired MyoKardia and what they have done to revolutionize cardiovascular treatments through a precision medicine approach. We look forward to welcoming their talented team to our company."

"MyoKardia was formed eight years ago with the aim of changing the world for people with serious cardiovascular diseases through bold and innovative science. Since then, MyoKardia's dedicated employees have established an unparalleled pipeline of targeted therapeutics designed to change the course of disease and return the heart to normal function," said Tassos Gianakakos, Chief Executive Officer of MyoKardia. "Bristol Myers Squibb shares our vision for transforming the treatment of cardiovascular disease. They value our team and the potential of our platform and, most importantly, share our unwavering commitment to placing patients at the center of everything we do. Together, our complementary strengths and expanded resources and reach will further accelerate the pace at which we can discover, develop and commercialize our novel medicines for the benefit of people suffering from cardiovascular disease around the world."

\*     \*     \*

**Transaction Terms and Financing**

Under the terms of the merger agreement, a subsidiary of Bristol Myers Squibb will promptly commence a tender offer to acquire all of the outstanding shares of MyoKardia's common stock for $225.00 per share in cash. MyoKardia's Board of Directors unanimously recommends that MyoKardia shareholders tender their shares in the tender offer.

The transaction is subject to customary closing conditions, including the tender of a majority of the outstanding shares of MyoKardia's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the successful closing of the tender offer, Bristol Myers Squibb will acquire all remaining shares of MyoKardia that are not tendered into the tender offer through a second-step merger at the same price of $225.00 per share.

Bristol Myers Squibb expects to finance the acquisition with a combination of cash and debt.

**About Hypertrophic Cardiomyopathy**

Hypertrophic cardiomyopathy, or HCM, is a chronic, progressive disease in which excessive contraction of the heart muscle and reduced ability of the left ventricle to fill can lead to the development of debilitating symptoms and cardiac dysfunction. HCM is estimated to affect one in every 500 people.

The most frequent cause of HCM is mutations in the heart muscle proteins of the sarcomere. In approximately two-thirds of HCM patients, the path followed by blood exiting the heart, known as the left ventricular outflow tract (LVOT), becomes obstructed by the enlarged and diseased muscle, restricting the flow of blood from the heart to the rest of the body (obstructive HCM). In other patients, the thickened heart muscle does not block the LVOT, and their disease is driven by diastolic impairment due to the enlarged and stiffened heart muscle (non-obstructive HCM). In either obstructive or non-obstructive HCM patients, exertion can result in fatigue or shortness of breath, interfering with a patient's ability to participate in activities of daily living. HCM has also been associated with increased risks of atrial fibrillation, stroke, heart failure and sudden cardiac death.

There are currently approximately 160,000 to 200,000 people diagnosed with symptomatic obstructive HCM across the U.S. and EU, with no existing effective treatment options beyond limited symptomatic relief. Patients are typically diagnosed in their 40s or 50s and the treatment is expected to be chronic. It is estimated that only approximately 25 percent of individuals with obstructive HCM

and only approximately 10 percent of individuals with non-obstructive HCM have received a diagnosis.

\*     \*     \*

**Advisors**

Gordon Dyal & Co., LLC is serving as exclusive financial advisor to Bristol Myers Squibb, and Kirkland & Ellis LLP is serving as legal counsel. Centerview Partners LLC and Guggenheim Securities are acting as joint financial advisors to MyoKardia and Goodwin Procter LLP is serving as legal counsel.

**About Bristol Myers Squibb**

Bristol Myers Squibb is a global biopharmaceutical company whose mission is to discover, develop and deliver innovative medicines that help patients prevail over serious diseases. For more information about Bristol Myers Squibb, visit us at BMS.com or follow us on LinkedIn, Twitter, YouTube, Facebook, and Instagram.

**About MyoKardia**

MyoKardia is a clinical-stage biopharmaceutical company discovering and developing targeted therapies for the treatment of serious cardiovascular diseases. The company is pioneering a precision medicine approach to its discovery and development efforts by 1) understanding the biomechanical underpinnings of disease; 2) targeting the proteins that modulate a given condition; 3) identifying patient populations with shared disease characteristics; and 4) applying learnings from research and clinical studies to inform and guide pipeline growth and product advancement. MyoKardia's initial focus is on small molecule therapeutics aimed at the proteins of the heart that modulate cardiac muscle contraction to address diseases driven by excessive contraction, impaired relaxation, or insufficient contraction. Among its discoveries are three clinical-stage therapeutics: mavacamten (formerly MYK-461); danicamtiv (formerly MYK-491) and MYK-224.

MyoKardia's mission is to change the world for people with serious cardiovascular disease through bold and innovative science.

39.     On October 19, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

40.     The Solicitation Statement, which recommends that MyoKardia shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Centerview and Guggenheim, in connection with their fairness opinions; (iii) potential conflicts of interest involving Centerview and Guggenheim; and (iv) potential conflicts of interest involving Company insiders.

41.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Company Board; (ii) Reasons for the Recommendation of the Company Board; (iii) Opinions of the Company's Financial Advisors; and (iv) Certain Prospective Financial Information.

42.     The tender offer in connection with the Proposed Transaction is set to expire at midnight (New York City time), on November 16, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning the Company's Financial Projections**

43.     The Solicitation Statement omits material information concerning the Company's financial projections.

44.     The Solicitation Statement provides that "the Company's senior management

prepared long-range projections of revenue and costs for fiscal years 2020 through 2045 based on its view of the prospects for the Company on a stand-alone basis, including with respect to the Company's programs for mavacamten, danicamtiv and certain other pipeline assets (the "Management Projections")."

45.     With respect to the Management Projections, the Solicitation Statement fails to disclose all line items underlying Total Net Revenue and EBIT.

46.     Further, the Solicitation Statement provides that the Management Projections "reflect a risk-adjusted outlook and were based on certain internal assumptions," stating in pertinent part:

> These Management Projections reflect a risk-adjusted outlook and were based on certain internal assumptions about the probability of technical success and regulatory approval, epidemiology, timing of commercial launch, sales ramp, pricing, reimbursement, market size, market share, competition, contractual relationships, market exclusivity, estimated costs and expenses, effective tax rate and utilization of net operating losses, ability to raise future capital, and other relevant factors relating to the Company and its product candidates.

47.     Yet the Solicitation Statement fails to adequately disclose the impact that the risk-adjusted outlook and assumptions had on the Management Projections and further fails to quantify the assumptions underlying the projections, including "the probability of technical success and regulatory approval, epidemiology, timing of commercial launch, sales ramp, pricing, reimbursement, market size, market share, competition, contractual relationships, market exclusivity, estimated costs and expenses, effective tax rate and utilization of net operating losses, ability to raise future capital, and other relevant factors relating to the Company and its product candidates."

48.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company

and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to tender their shares in connection with the Proposed Transaction.

49.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

50.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview and Guggenheim.

51.     The valuation methods, underlying assumptions, and key inputs used by Centerview and Guggenheim in rendering their purported fairness opinions must be fairly disclosed to MyoKardia shareholders. The description of Centerview's and Guggenheim's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, MyoKardia shareholders are unable to fully understand Centerview's and Guggenheim's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### A. *Centerview's Analyses*

52.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the implied terminal value of the Company; (2) the

individual inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (3) the basis for Centerview's assumption that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2045 at a rate of free cash flow decline of 80.0% year-over-year in perpetuity; (4) the Company's estimated future losses; (5) the estimated costs associated with future equity raises; and (6) the Company's fully diluted outstanding shares of its common stock as of October 1, 2020.

53.    With respect to Centerview's "*Analyst Price Target Analysis*," the Solicitation Statement fails to provide the individual price targets analyzed and the sources thereof.

54.    With respect to Centerview's "*Premiums Paid Analysis*," the Solicitation Statement fails to disclose the individual premiums paid in each transaction selected by Centerview.

## B. *Guggenheim's Analyses*

55.    The Solicitation Statement fails to disclose the following concerning Guggenheim's "*MyoKardia Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rate range of 8.5%–10.5%, and (ii) perpetual growth rate of negative 80%; (2) the Company's terminal value; (3) the costs associated with future financings assumed to occur between 2022 and 2024; and (4) the Company's diluted shares outstanding.

56.    With respect to Guggenheim's "*Premia Paid in Selected Merger and Acquisition Transactions*," the Solicitation Statement fails to identify each transaction and disclose the individual premiums paid therein.

57.    With respect to Guggenheim's "*Wall Street Equity Research Analyst Stock Price Targets*," the Solicitation Statement fails to provide the individual price targets analyzed and the sources thereof.

14

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Centerview and Guggenheim

58.     The Solicitation Statement omits material information concerning potential conflicts of interest involving Centerview and Guggenheim.

59.     The Solicitation Statement states that Guggenheim has not been engaged by the Company or Bristol Myers to provide financial advisory or investment banking services during the past two years for which Guggenheim received fees.[3]

60.     The Solicitation Statement states that Centerview has not been engaged by the Company or Bristol Myers to provide financial advisory or other services during the past two years prior to the date of its written fairness opinion and did not receive compensation from those entities during that period.[4]

61.     The Solicitation Statement fails to disclose whether and to what extent Centerview

––––––––––––––––––––––––––

[3] The Solicitation Statement provides, in pertinent part:

> Aside from its current engagement by the Company, Guggenheim Securities has not been previously engaged during the past two years by the Company, nor has Guggenheim Securities been previously engaged during the past two years by Parent, to provide financial advisory or investment banking services for which Guggenheim Securities received fees.

*See* Solicitation Statement at 45.

[4] The Solicitation Statement provides, in pertinent part:

> In the two years prior to the date of its written opinion, except for Centerview's current engagement, Centerview had not been engaged to provide financial advisory or other services to the Company, and Centerview did not receive any compensation from the Company during such period. In the two years prior to the date of its written opinion, Centerview had not been engaged to provide financial advisory or other services to Parent, and Centerview did not receive any compensation from Parent during such period.

*See* Solicitation Statement at 36.

and Guggenheim each provided services to affiliates of the Company and Bristol Myers, including the timing and nature of the services provided and the amount of compensation received, in the two years prior to the date of their respective fairness opinions.

62.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

63.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.    Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

64.     The Solicitation Statement omits material information concerning potential conflicts of interest involving Company insiders.

65.     Representatives for the Company and Bristol Myers discussed certain employment-related matters on October 2, 2020 leading up to the execution of the merger agreement in connection with the Proposed Transaction.

66.     But the Solicitation Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

67.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders, particularly here, where Defendant CEO Gianakakos (i) played a key role in negotiating the merger with Bristol

Myers, (ii) executed a Tender and Support Agreement in support of the Proposed Transaction, and (iii) is expected to receive a windfall of over $140 million if the Proposed Transaction is consummated. This information is also material in light of the fact that the Company failed to perform a robust sales process, only contacting one other potential suitor (Party A) and only doing so nearly two weeks after receiving Bristol Myers' September 2nd Proposal.

68.     Further, the aforementioned information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.[5]

69.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

70.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

72.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified

---

[5] The Solicitation Statement acknowledges that "interests that certain directors and executive officers of the Company may have with respect to the Transaction that may be different from, or in addition to, their interests as stockholders of the Company or the interests of the Company's other stockholders generally." *See* Solicitation Statement at 29.

above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

73.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

74.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

75.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

76.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

77.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

78.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

80.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

81.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

82.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

83.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

84.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and

instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

85.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

86.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

87.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

89.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

90.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

91.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

92.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

93.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 27, 2020                                     Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com
      zhalper@halpersadeh.com

*Counsel for Plaintiff*